UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL C. BAKER,

                    Plaintiff,            05-CV-6559T

          v.                              **DECISION**
                                          **and ORDER**
CSX TRANSPORTATION, INC.,

                    Defendant.
_____

                    <u>INTRODUCTION</u>

     Plaintiff Michael Baker, ("Baker"), brings this action
pursuant to the Americans with Disabilities Act ("ADA") and the New
York State Human Rights Law claiming that defendant CSX
Transportation, Inc., ("CSX") unlawfully discriminated against him
on the basis of a disability.  Specifically, plaintiff alleges that
he is disabled under the ADA as a result of a Hepatitis C
infection; that CSX failed to accommodate his condition; and that
he was unlawfully terminated from his employment because of his
condition.

     Defendant denies plaintiff's claims, and alleges that it
accommodated Baker's needs, and that his termination of employment
resulted from a company-wide downsizing--not because of any
discriminatory animus.  Defendant moves for summary judgment on
grounds that plaintiff has failed to state a cause of action for
employment discrimination.  Specifically, defendant contends that
Baker has failed to establish that he is disabled under the terms
of the ADA; has failed to establish that CSX did not offer

reasonable accommodations for his condition;, and has failed to establish that his employment was terminated as a result of his disability.  Plaintiff opposes defendant's motion and asserts that there are questions of fact as to whether or not he was discriminated against on the basis of a disability.

For the reasons set forth below, I grant in-part and deny in-part defendant's motion for summary judgment.  Defendant's motion to dismiss plaintiff's federal claim under the ADA is granted. Defendant's motion for summary judgment with respect to plaintiff's state law claim is denied as moot for lack of subject matter jurisdiction.

<u>BACKGROUND</u>

Plaintiff Michael Baker is a former employee of defendant CSX Transportation, Inc.  CSX operates railroads in several area of the country, including the Northeastern United States.  Baker began working in the railroad industry in 1976 for defendant's predecessor Conrail.  In June, 1999, CSX took control of Conrail's operations in various geographical areas, and Baker became an employee of CSX.  Baker was employed as a Supervisor of Signal Construction based in Lyons, New York at the time CSX took over that operation.  Shortly after CSX took over, Baker was diagnosed with Hepatitis C.   In December 2001, more than two years after he was diagnosed with Hepatitis C, Baker sought permission to take sick leave pursuant to the Family and Medical Leave Act of 1993

("FMLA").  Although Baker had not missed any work as a result of his Hepatitis C, he anticipated that he would need to take sick leave to undergo treatment for the disease.  According to Baker, the treatment, which consisted of, _inter_ _alia_, chemo-therapy, had the potential for causing him to be run down, fatigued, nauseous, and exhausted.  Despite Baker's request for FMLA leave having been granted by CSX in December of 2001, because the United States Food and Drug Administration had not yet approved the treatment that Baker had chosen, he did not undergo that treatment until January of 2003.  Because he was not undergoing treatment in 2002, and because his Hepatitis C symptoms did not prevent him from working, Baker did not utilize any FMLA time in either 2001 or 2002.

In March, 2002, plaintiff applied for the position of Supervisor of Signal Maintenance based in Rochester, New York. According to Baker, he sought the position because he wanted to be closer to Rochester, New York.  Baker was hired for this position, and reported to William Tarvin, the Assistant Regional Signal Engineer.  According to Baker, the relationship between he and Tarvin was "acrimonious" "from the day I got there."  _See_ Deposition Transcript of Michael Baker at p. 89, lns. 13-17. (hereinafter the "Baker Transcript")  Baker claims that the relationship between he and Tarvin was poor because, _inter_ _alia_, Baker "exposed [Tarvin] for his lack of integrity on a somewhat regular basis."  Baker Transcript at p. 89, lns. 14-16.  Plaintiff

contends that almost immediately upon taking his new position in March of 2002, he "exposed [Tarvin] for violating corporate policy" when he discovered that Tarvin had allegedly covered up an on-the-job injury of another employee.  Baker Transcript at p. 86.  Baker also claims that upon assuming his new role as maintenance supervisor, he "uncovered numerous maintenance problems in the Rochester Area, many of them life threatening that had been there for years" under Tarvin's supervision.  Baker Transcript at p. 83, lines 17-19; p. 84, lns. 5-10.  See also May 15, 2007 Affidavit of Michael Baker ("herein after the "Baker Affidavit") at ¶ 17 ("[Tarvin] became very acrimonious after my refusal to be part of the illegal injury cover up and my finding critical problems that he and my predecessor had overlooked for years.")

In December 2002, after plaintiff had been in his position for approximately 9 months, Tarvin prepared a performance evaluation critiquing Baker's employment performance.  Baker was rated in 15 weighted categories on a scale of 1 to 4, with one being the lowest, and 4 being the highest.  As part of the performance evaluation, Baker was required to perform a self evaluation.  Baker rated his performance as a "4" in 11 categories, and as a "3" in 4 categories.  Tarvin gave Baker a rating of "4" in 5 categories, a "3" in 6 categories, and a "2" in 4 categories.

Although the scores assigned by Baker and Tarvin were the same in 7 of the 14 categories (including the same scores being given in

2 of the 3 highest weighted categories), and only one level apart in 6 of the remaining 8 categories, and despite the fact that in 2001 Baker had not received a rating of "4" in any category; received a "3" in 8 out of 9 categories, and received a "2" in the remaining category, Baker contends that the 2002 evaluation was unfair and inadequate, and that Tarvin rated him poorly because of his "general acrimony" towards the plaintiff. Baker Deposition at p. 83, lns. 9-12, p. 84 lns. 20-24. Baker Affidavit at ¶ 20. Baker claims that he contacted Tarvin's supervisor William Emerson (whom Baker referred to as friend based on their working relationship of approximately 25 years (Baker Transcript at p. 36 lns. 7-8)) to complain about the evaluation, and that although Emerson (who also considered Baker to be a friend (Deposition Transcript of William Emerson at p. 17, lns 7-13) agreed to review the evaluation, Emerson was not able to do so in a timely fashion, and as a result, lost the opportunity to make any changes to the evaluation. Emerson does not recall being asked by Baker to review the evaluation. Deposition Transcript of William Emerson at p. 24, lns 13-25.

By the end of 2002, plaintiff's condition had not prevented him from working, and Baker had not missed any time from work as a result of his disease. Baker Transcript at p. 46 lns 5-7; p. 49 lns 5-7; p. 53 ln. 24 - p. 54. ln. 2. Nor had plaintiff requested any type of accommodation for his condition at work. Baker

Transcript at p. 116, lns. 8-12.   While Baker states that the
symptoms of his condition caused flu-like symptoms fatigue, nausea,
and headaches (Baker Transcript at p. 45 lns. 7-25) he further
stated that the symptoms were erratic and followed no discernable
pattern.   Baker Transcript at p. 46, lns. 3-4.   Prior to 2003,
Baker treated his symptoms with over-the-counter pain relievers and
medicines, and visited his doctor approximately every 6 months to
have his condition monitored. Baker Transcript at p. 46 lns 8-17;
p. 54 lns 16-18.

In early January, 2003, Baker began his treatments for
Hepatitis C.  The treatments involved a weekly shot of Interferon
and oral doses of Ribovarin taken twice daily.  Baker Transcript at
p. 62 ln. 6 - p. 63 ln. 6.  It was anticipated that the treatments
would last for 48 weeks.  Baker Transcript at p. 171, lns. 20-21.

According to Baker, side effects of the treatment included
fatigue, nausea, flu-like symptoms, irritability, and potentially
depression.  Baker Transcript at p. 70 ln. 21 - p. 71 ln. 8.

On January 24, 2003, Baker requested, and was granted
permission to take FMLA leave.  As of this date, Baker had not
missed any work due to his condition or treatments, and had not
requested any accommodation for his condition.   In February,
however, Baker complained to his doctor that he was having trouble
sleeping due to being "on call" at CSX on some nights and weekends,
which was required of him as a supervisor in case a problem arose

that required immediate attention.  Baker's physician wrote a note to CSX explaining that it was imperative for the plaintiff to get uninterrupted sleep while in treatment, and upon receiving that note, Baker was no longer required to be on call.  Baker Transcript at p. 67, lns 21-24.

On May 2, 2003, Tarvin e-mailed Baker accusing him of not being in the office for daily, mandatory 6:20 a.m. conference calls which were held between regional mangers and supervisors.  See Exhibit "D" to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  In response, Baker indicated that the treatment he was undergoing left him fatigued in the morning, and that although it took him a little longer to "get going" in the morning, he was capable of working a full day.  Id.  Although he did not ask for any specific accommodation, he asked for flexibility from Tarvin in light of his illness and the side effects of his treatment. See Exhibit "D" to Plaintiff's Opposition to Defendant's Motion for Summary Judgment.  Tarvin responded to Baker's request by stating in relevant part that "[i]t is not acceptable to do your conference call from home and then hit the road at 7:30 or 8:00AM. If you do, then it must be charged against FMLA." Id.  Less than one month after Tarvin's e-mail to Baker, Baker informed CSX in an e-mail to Tarvin, that as a result of side effects from his treatment, he would be unable to continue to work, and instead would be taking short-term disability.

7

In July, 2003, while Baker remained on short-term disability, CSX underwent a reorganization under which approximately 106 management positions were eliminated.   Tarvin's position was eliminated, and he was allowed to take a lower level position as a Signal Supervisor.   Because Baker had the lowest evaluation score of the Signal Supervisors in the New York region, he was displaced from his position, and was allowed to fill a Supervisor of Signals position in Nashville, Tennessee.   While still on short-term disability, Baker accepted this position in July, 2003.

Upon the completion of his treatments for Hepatitis C., Baker ended his period of short-term disability, and, in January 2004, reported to his new position in Nashville.   According to Baker, he was not given any work assignments upon reporting to Nashville. Moreover, although the Interferon and Ribovarin treatments Baker received allegedly cured him of Hepatitis C, they caused him to suffer the more debilitating condition of Chronic Fatigue Fibromyalgia.   Baker Transcript p. 192 lns. 3-23.   As a result of the symptoms from Chronic Fatigue Fibromyalgia, Baker discontinued his work, and went on long-term disability as of March 15, 2004.

In April, 2004, CSX undertook another reorganization which resulted in the Nashville, Tennessee and Louisville, Kentucky regions being combined, and supervisor positions being reduced from 11 to 7.   Baker's job functions were absorbed by the Electronics Engineer in Nashville, and Baker's position was eliminated.   Baker

was offered enhanced pension benefits upon the elimination of his position, but he declined to sign a release and waiver, and therefore, did not accept the enhanced benefits upon the termination of his employment.  On February 11, 2005, Baker filed a claim of discrimination with the EEOC.  Thereafter, on October 24, 2005, plaintiff filed the instant action.


DISCUSSION

        I.   Defendant's Motion for Summary Judgment

        Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  When considering a motion for summary judgment, all inferences and ambiguities must be resolved in favor of the party against whom summary judgment is sought.  Gallo v. Prudential Residential Services, 22 F.3d 1219, 1223 (2d Circ. 1994); Tomka v. Seiler Corp., 66 F.3d 1295, 1304 (2d Cir. 1995).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. Gallo, 22 F.3d at 1224.  The defendant moves for summary judgment on grounds that no issues of material fact exist,

and that plaintiff has failed to establish a prima facie case of disability discrimination.

    II.  <u>Federal Claims</u>

    A.  <u>Several of Plaintiff's Claims are Time Barred</u>

    Plaintiff alleges that he was discriminated against on the basis of his disability, and that his employment was terminated as a result of his Hepatitis C condition in violation of the Americans with Disabilities Act, codified at 42 U.S.C. § 12101 <u>et</u>. <u>seq</u>. Specifically, plaintiff contends that he was discriminated against on several occasions including: (1) in December 2002 when his supervisor gave him what he considered to be a poor performance evaluation; (2) from February 2003 through May, 2003 when his request for "flexibility" in scheduling was allegedly denied; (3) in July 2003 when he was displaced from his job in Rochester, and agreed to take a similar job in Nashville; and (4) in April, 2004 when his job in Nashville was eliminated.

    With the exception of plaintiff's contention that his employment was unlawfully terminated in April 2004, the plaintiff's federal claims are time barred.  Similar to Title VII of the Civil Rights Act of 1964, the ADA provides that claims for discrimination must be brought within 300 days of the date on which the alleged discrimination occurred.  42 U.S.C. 12117(a)(adopting Title VII time limits for claims made under the ADA).  Thus, under the ADA, courts do not have jurisdiction over claims of discrimination which

occurred more than 300 days prior to the date on which an administrative charge of discrimination was filed. <u>See</u> <u>National Railroad Passenger Corporation v. Morgan</u>, 536 U.S. 101, 108 (2002)(reaffirming that "strict" adherence to the 300 day time limit is the "best guarantee of evenhanded administration of the law.")

Prior to 2002, several courts often allowed otherwise untimely charges of discrimination to be heard if they constituted part of a continuing course of conduct, provided that a portion of the conduct complained of occurred within the claims limitation period. In 2002, however, the Supreme Court held that discrete acts of discrimination which allegedly occurred outside the limitations period may not be heard even if those acts relate to conduct that occurs within the limitation period. <u>Morgan</u>, 536 U.S. at 108-09. As a result, even where the plaintiff claims that a discrete discriminatory act that occurred outside of the statutory time is related to an act that occurred within the statutory period, theclaim regarding the untimely act may not be adjudicated by the court. <u>See also</u> <u>Ledbetter v. Goodyear Tire and Rubber Co.</u>, ___ U.S. _____ 127 S.Ct. 2162 (2007)(claim that poor performance evaluation (which was allegedly given because of discriminatory animus towards plaintiff, and which led to disparity in pay over the course of several years), was not actionable as part of a continuing series of discriminatory acts where the evaluation

occurred more than 300 days prior to the administrative complaint being filed).

In the instant case, the allegedly poor evaluation given to Baker occurred in 1999, more than five years before he filed his charge of discrimination with the EEOC. Accordingly, Baker may not proceed on his claim that he received a poor evaluation because of discrimination based on his alleged disability. See e.g., Wynn v. New York, Office of Children and Family Services, 506 F.Supp.2d 215, (W.D.N.Y., 2007)(Larimer, J.)(performance evaluation is a "discrete act" and therefore any claim of discrimination arising from that act must be filed within the statutory time period); Gobin v. New York City Health and Hospitals Corp., 2006 WL 2038621 * 4 (S.D.N.Y., July 19 2006) (allegedly discriminatory performance evaluations are discreet acts)(citing Hernandez v. Kellwood Co., 2003 WL 22309326, at *15 (S.D.N.Y. Oct. 8, 2004)).

Similarly, Baker's claim that CSX failed to accommodate his disability after Baker made a request for such accommodation is time-barred. Plaintiff contends that he requested "flexibility" with his scheduling prior to June, 2003, and that CSX denied his request. Because this transaction occurred almost two years prior to plaintiff's filing of his discrimination claims with the EEOC, this claim is time barred. See Stuevecke v. The New York Hospital Medical Center of Queens, 2003 WL 22019073 (E.D.N.Y., August 26,

2003)(alleged failure to provide reasonable accommodation to an employee is a "discreet act" under the ADA).

Finally, with respect to the statute of limitations, Baker claims that the July 2003 displacement of his job in Rochester New York, and transfer to Tennessee was the result of unlawful discrimination. Again, because these acts took place more than 300 days before the plaintiff filed his administrative charge of discrimination, this claim is time barred. Bailey v. Synthes, 295 F.Supp.2d 344, 354 (S.D.N.Y. 2003)("[D]iscrete acts [of discrimination] include allegedly discriminatory transfers, job assignments and non-promotions, and failures to compensate adequately."); Benjamin v. Brookhaven Science Associates, LLC 387 F.Supp.2d 146, 154 (E.D.N.Y., 2005)("[I]t is well-settled in the Second Circuit that alleged failures to compensate adequately, transfers, job assignments and promotions are discrete acts and, if untimely, cannot form the basis of a continuing violation claim."); Gobin, 2006 WL 2038621 at * 4;  Hernandez, 2003 WL 22309326, at *14.

For the reasons set forth above, I find that plaintiff's discrimination claims based on his allegedly poor evaluation, failure to accommodate, and transfer are untimely, and accordingly I grant defendant's motion for summary judgment on these claims.

B.   Plaintiff has Failed to Establish a Prima Facie Case of Disability Discrimination

Even if the court were to find that all of plaintiff's claims were timely, I find that none of plaintiff's claims establish a prima facie case of discrimination under the ADA. Section 12112 of the ADA prohibits discrimination against qualified individuals with a disability with respect to conditions of employment including hiring, advancement, discharge and compensation.  42 U.S.C.A. § 12112 (1995).  To state a prima facie case of discrimination under the ADA, a plaintiff must demonstrate that (1) he is a handicapped person within the meaning of the ADA; (2) he is otherwise qualified to perform the duties of his former job; (3) adverse employment action was taken against him because of his handicap; and (4) that his employer is subject to the anti-discrimination provisions of the ADA.  See Joyce v. Suffolk County, 911 F.Supp. 92, 94 (E.D.N.Y. 1996) (citations omitted).  Once a plaintiff has stated a prima facie case of discrimination, the defendant must proffer a legitimate, non-discriminatory reason for taking the alleged adverse action against the plaintiff.  If the defendant satisfies this requirement, the burden then shifts back to the plaintiff to rebut defendant's proffered reason by demonstrating that the defendant's explanation is either pretextual or not worthy of credence.  See Tomka v Seiler, 66 F.3d 1295, 1308 (2nd Cir. 1995).

In the instant case, I find that the plaintiff has failed to establish that he is a qualified individual with a handicap under

the ADA, and therefore, cannot state a prima facie case of discrimination.

It is well settled under federal law that the mere presence of a medical condition or impairment suffered by a plaintiff does not establish that the plaintiff is disabled under the ADA.  Toyota Motor Mfg., Kentucky v. Williams 534 U.S. 184, 195 (2002)("[m]erely having an impairment does not make one disabled for purposes of the ADA").  Rather, to establish the existence of a disability, a plaintiff must demonstrate that he or she suffers from a physical or mental impairment that "substantially limits one or more major life activities . . . ."  42 U.S.C. § 12102(2)(A).  "Major life activities" are defined in the regulations promulgated by the EEOC as "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  45 C.F.R. § 84.3(j)(2)(ii).

To be "substantially impaired" from performing a major life activity, a plaintiff must have an impairment that "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."  Toyota, 122 S.Ct. at 691.  Moreover, "[t]he impairment's impact must also be permanent or long term." Id.  See also 29 C.F.R. § 1630.2(j)(1)(i)-(ii)(A major life activity is substantially limited when an individual cannot perform an activity that an average person in the general population could perform, or faces significant restrictions

in the "condition, manner, or duration under which the individual can ... perform [the] activity.")  Finally, the determination of whether or not a person suffers a disability under the ADA "is an individualized inquiry" that does not rest on the mere diagnosis of an impairment.  Sutton v. United Airlines, 527 U.S. 471, 483 (1999).  Instead, courts are to look to "the effect of [an] impairment on the life of the individual."  29 CFR pt. 1630, App. § 1630.2(j).  See also, Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 151 (2d Cir.1998)(disability determinations to be made on an individualized case-by-case basis).

In the instant case, plaintiff has failed to identify any major life activity that was substantially impaired either by his Hepatitis C, or the treatment he received for that disease. Although plaintiff complained that his ability to engage in recreational running was completely compromised, and that his ability to do carpentry around the home was compromised intermittently, such claims do not allege or establish the substantial impairment of a major life activity.  Colwell v. Suffolk, 158 F.3d 635, 643 (2nd Cir. 1998 (activities such as working on cars, moving furniture, performing housework other than basic chores, doing yard work, painting and plastering, driving, and playing sports, are not major life activities); Barber v Verizon New England Inc., 2006 WL 3524465 *4 (D. R.I., Dec. 6, 2006) (plaintiff's Hepatitis C condition that allegedly prevented

him from engaging in full range of "physical activity" not a disability as "physical activity" is not a major life activity for purposes of determining disability status).

Plaintiff also contends that his ability to sleep was substantially compromised because of the treatments he was receiving.  While sleeping is considered to be a "major life activity," there is no evidence in the record to support plaintiff's claim that either his condition or treatment for the condition substantially impaired his ability to sleep.

"It has been recognized that difficulty sleeping is a common problem, and the mere allegation that plaintiff had difficulty sleeping is not sufficient to show a substantial limitation in the major life activity of sleeping." Matya v. Dexter Corp., 2006 WL 931870 *7 (W.D.N.Y., April 11, 2006)(Curtin, S.J.) (citing Colwell, 158 F.3d at 644.  Instead, a plaintiff must allege sleep impairments with "sufficient detail to convey the existence of an impairment." Granados v. J.R. Simplot Co., Inc., 2008 WL 313056 *1 (9th Cir., February 1, 2008).  Vague, conclusory, or self-serving complaints of an inability to sleep do not establish the existence of a substantial impairment with respect to the ability to sleep. Colwell, 158 F.3d at 644.  See also, Nadler v. Harvey,2007 WL 2404705 *6 (11th Cir., August 24, 2007)(noting that several Circuit Courts have found that an inability to sleep more than 3 hours in a night or 2.5 hours at a time does not establish a severe

17

impairment absent medical evidence that the inability to sleep has an effect on daily functioning).

In this case, plaintiff's complaints of an inability to sleep are vague, conclusory, and self-serving.  In his May 15, 2007 Affidavit, Baker stated that "[i]n February 2003 because of my health I could not get any sleep so I consulted with Dr. Saha and he sent a letter to CSX requesting that I be taken off the night and weekend call list."  Baker Affidavit at ¶ 27.  In response to an interrogatory asking him to describe all of the activities that were affected by his condition, Baker stated that he "suffered from severe problems with sleeping on a regular basis" and the "regular loss of ability to sleep."  See Plaintiff's Answers to Defendant's Interrogatories at pp. 4-5 (attached as Exhibit "J" to defendant's Amended Motion for Summary Judgment).  Neither in his answers to defendant's interrogatories nor in his affidavit did the plaintiff attempt to provide any detail in support of his conclusory allegation that he had difficulty sleeping.  There is no indication as to how often this problem occurred, and how the inability to sleep manifested itself.

Additionally, plaintiff's deposition testimony suggests that the inability to sleep was not caused by his health condition, but instead, was caused by interruptions from calls he received from work.  Plaintiff was required to be "on call" on some nights and weekends, and testified that his inability to "get any sleep"

resulted from the fact that  CSX "called me regularly at night and
interrupted my sleep two or three times per night."  Baker
Transcript at p. 64, lns. 17-20.  Nowhere in Baker's testimony does
he claim that his disease or treatment substantially impaired his
ability to sleep.  Moreover, it is undisputed that once Baker asked
to be taken off of the call list on nights and weekends, he was
taken off the call list, and was no longer responsible for taking
calls from the call center.

The conclusion that plaintiff's sleeping difficulties resulted
from work interruptions and not from his health condition is
further supported by the letter prepared on his behalf by Dr. Saha.
In that letter, Dr. Saha noted that:

> The side effects of [Baker's] medication can
> be severe in nature and may have an affect
> upon his normal work schedule.  The medication
> he is on will tend to make him extremely
> fatigued with muscle weakness and nausea.  It
> will also leave his immune system impaired.
> It is imperative that he get uninterrupted
> sleep at night and that he work only as many
> hours as he is able to, confined to a Monday
> thru [sic] Friday work schedule. There will be
> days where he will only be able to work a few
> hours or possibly not at all.  Since the
> symptoms may change from day-to-day, his
> schedule should remain as flexible as
> possible.

February 10, 2003 Letter from Dr. Saha to CSX, attached as Exhibit
"G" to Defendant's Motion for Summary Judgment.  Although Dr. Saha
noted some of the side effects of plaintiff's treatment, he did not

include inability to sleep as one of those side effects.  Rather, he explained that because of the side effects of plaintiff's treatment, it was necessary for Baker to get uninterrupted sleep, and he suggested that by not receiving calls at night, Baker would be able to get the sleep he needed.

Because the plaintiff has failed to establish that he suffered from a substantial inability to sleep that resulted from his condition, or that any inability to sleep was severe, I find that plaintiff has failed to establish that the major life activity of sleeping was substantially impaired by his condition.

As to plaintiff's remaining claims that he was intermittently unable to move out of bed because of joint pain and swelling, was occasionally unable to dress or walk from the bedroom to the bathroom because of migraine headaches, and, after April 2004, occasionally experienced shortness of breath when he exerted himself, I find that these claims fail to allege or establish the severe impairment of any major life activity.

While each case of disability is to be determined on its own merits, my determination that plaintiff's Hepatitis C is not a disabling condition comports with the several courts that have substantively analyzed whether or not Hepatitis C constitutes a disability under the ADA.  See Barber, 2006 WL 3524465 (Hepatitis C that allegedly impaired "physical activity", sexual activity, and the ability to reproduce not a disability under the ADA); Grant v.

Baptist Hospital East, 2005 WL 1503570 (W.D.Ky., June 23, 2005)("No reasonable jury could find that [H]epatitis C substantially limited Plaintiff's performance of major life activities."); Rodgers v. Norfolk Southern Corporation, 304 F.Supp.2d 961, (S.D. Ohio, 2003)(no evidence that Hepatitis C infection substantially inhibited any major life activity).

Because plaintiff has failed to establish that he is a qualified individual with a disability under the ADA, I find that he has failed to state a prima facie case of discrimination under the ADA, and therefore grant defendant's motion for summary judgment dismissing his claim under the ADA.

   C.   Defendant has stated a legitimate, non-discriminatory
        explanation for plaintiff's transfer and ultimate
        termination of employment.

Even if the plaintiff could pursue his time-barred claims, and even if he could state a prima facie case of discrimination, I find that the defendant has stated a legitimate, non-discriminatory reason for transferring and ultimately terminating plaintiff's employment.  The defendant has presented uncontroverted evidence that in the Summer of 2003, CSX was undergoing a downsizing in which approximately 106 management positions were eliminated, and that plaintiff was displaced from his position in Rochester, New York.  It is further uncontroverted that plaintiff accepted an equivalent position in Nashville, Tennessee with no loss of pay or

benefits. Similarly, it is uncontroverted that CSX underwent another downsizing in 2004, and that four out of eleven Supervisor of Signals positions, including plaintiff's position, were eliminated. Accordingly, the defendant has stated a legitimate, non-discriminatory reason for transferring Baker in 2003 and terminating his employment in 2004.

> D.  Plaintiff has failed to rebut defendant's legitimate non-discriminatory reason for transferring the plaintiff and ultimately terminating plaintiff's employment.

Once the defendant has stated a legitimate, non-discriminatory reason for taking an adverse action against an employee, the plaintiff bears the burden of demonstrating that the defendant's stated reason for taking the action is pretextual, and that discrimination is the real reason for the adverse action. See Woroski v. Nashua Corp., 31 F.3d 105, 110 (2nd Cir. 1994)(holding that plaintiff must present "sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the [defendant] were false, and that more likely than not [discrimination] was the real reason for the [employment action]").

In the instant case, plaintiff has failed to present evidence that the reasons for his transfer and termination were false, and that discrimination was the real reason for those actions. Plaintiff has not controverted the defendant's explanation that CSX

22

underwent two downsizings, and that plaintiff's positions were either taken by employees who were displaced from their own positions, or who had higher evaluation ratings.   He has not presented any evidence that either Tarvin or Emmerson, or any other Manager at CSX made any disparaging or discriminatory remarks with respect to persons suffering from a disability or Hepatitis C. While Baker does contend that Tarvin gave him a poor evaluation, he testified at his deposition that he believed the reason for the poor evaluation was acrimony between the two, and not because of a discriminatory animus resulting from Baker's alleged disability from Hepatitis C.   Baker Transcript at p. 84, lns 20-24; p. 89, lns. 16-22.   Because the plaintiff has failed to rebut the defendant's legitimate, non-discriminatory reason for transferring the plaintiff and terminating his employment, I find that plaintiff has failed to state a claim for employment discrimination.

III   <u>Plaintiff's State Law Claims</u>.

Where a district court has dismissed all claims over which it has original jurisdiction, the court may decline to exercise jurisdiction over state law claims.   28 U.S.C. 1367(c)(3).   <u>See also</u>   <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 726 (1966)(district court, may, in its discretion, dismiss a plaintiff's state law claims where "considerations of judicial economy, convenience, and fairness to the parties" require.)

Because plaintiff's federal claims have been dismissed, I decline to exercise jurisdiction over his remaining state law claims.

## CONCLUSION

For the reasons set forth above, I grant defendant's motion for summary judgment with respect to plaintiff's federal claims, and dismiss plaintiff's federal claims with prejudice.  I deny defendant's motion for summary judgment with respect to plaintiff's state law claims as moot, and dismiss those claims without prejudice for lack of subject matter jurisdiction.

ALL OF THE ABOVE IS SO ORDERED.


S/ Michael A. Telesca
     Michael A. Telesca
United States District Judge


DATED:    Rochester, New York
          March 4, 2008